# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

SHARAY DAVIS, )
)
               Plaintiff, )
)
               v. )      Case No. 4:25-cv-00779-RK
)
INDEPENDENCE HOUSING )
AUTHORITY (IHA) and GERI NICKELL, )
)
               Defendants. )

## <u>ORDER</u>

Before the Court is Defendants Independence Housing Authority and Geri Nickell's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 9, 17.)[1] The motion is fully briefed. (Docs. 4, 10, 12, 13, 14, 18.) After careful consideration and for the reasons explained below, the Court **ORDERS** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**. Specifically, the motion to dismiss is granted as to: Count 1 and Count 4 (asserting a *Monell* claims under 42 U.S.C. § 1983 against Independence Housing Authority), Count 2 (asserting a § 1983 First Amendment retaliation claim), and Count 3 (asserting a § 1983 claim for violation of 42 U.S.C. § 1437f and HUD regulations). At this juncture, the Court declines to dismiss Count 1 (asserting a § 1983 due process claim against Defendant Nickell) on qualified immunity grounds or for failure to state a claim.

## Background[2]

This case arises out of Plaintiff's participation in a federal rental assistance program, the Housing Choice Voucher Program ("HCV Program") under Section 8 of the United States Housing Act of 1937, as amended, *see* 42 U.S.C. § 1437f. As relevant here, Plaintiff participated in the HCV Program as administered by the Independence Housing Authority ("IHA"). Defendant IHA

---

[1] Defendants filed a motion to dismiss at Doc. 9 raising arguments pursuant to Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. On February 10, 2026, Defendant Nickell filed a "renewal of motion to dismiss," indicating that Plaintiff cured the deficiency of service of process on Defendant Nickell, and therefore Defendant Nickell's motion to dismiss pursuant to Rule 12(b)(5) was rendered moot. (Doc. 17.) The Court thus proceeds to consider Defendants' motion to dismiss only as to Rule 12(b)(6).

[2] The following facts are drawn from Plaintiff's Amended Complaint, (Doc. 4), unless otherwise noted and are accepted as true for purposes of the pending motion to dismiss.

is a public housing authority organized under Missouri law. (Doc. 4 at ¶ 2.) Defendant Geri Nickell was, at all relevant times, a compliance and hearing officer for IHA. (*Id.* at ¶ 3.)

Between March and May 2024, IHA initiated Plaintiff's annual recertification process and mailed Plaintiff a recertification packet that included HUD Form 9886—Authorization for Release of Information, along with an additional "Authorization for Release of Information" form created by IHA for internal use ("IHA ROI Form").[3] (*Id.* at ¶ 6.) Plaintiff alleges that the IHA ROI Form used HUD's likeness, formatting, and language, but requested information that HUD does not require. (*Id.* at ¶ 7.) Plaintiff completed and signed HUD Form 9886 and submitted the required recertification materials but declined to sign the IHA ROI Form because she believed it was misleading and requested unauthorized information. (*Id.* at ¶¶ 8-9.) IHA informed Plaintiff that signing all forms, including the IHA ROI Form, was required to complete recertification. (*Id.* at ¶ 10.) After she refused to sign and return the IHA ROI Form, Plaintiff was notified on August 13, 2024, that she "had been removed from the HCV Program and that formal notice would be sent." (*Id.* at ¶ 12.)

At the time, Plaintiff did not have a stable residence and asked that the notice be sent by email because mail sent to her former address would not reach her. (*Id.* at ¶ 13.) Plaintiff also submitted a written extension request under a provision of the IHA Administrative Plan "for additional search time" under which she was "automatically entitled to two consecutive 30-day extensions" for a housing voucher. (*Id.* at ¶¶ 22, 23.) Her requests under the "search time" provision of the IHA Administrative Plan were not granted, however. (*Id.* at ¶ 24.) Plaintiff also informed Defendant Nickell in writing that she wished to request an informal hearing regarding her termination from the program, but her request was denied and no hearing was provided. (*Id.* at ¶¶ 17-20.) Plaintiff asserts that IHA's refusal to provide a hearing prevented her from contesting the termination and contesting the refusal to grant her requests for the mandatory "search time" extensions under the IHA Administrative Plan. (*See id.* at ¶ 27.)

As a result of Defendants' actions, Plaintiff alleges that in addition to losing rental assistance, she suffered loss of housing opportunity, financial strain, and emotional and mental

---

[3] HUD, the federal agency that administers the HCV Program, requires that participants in the HCV Program complete an annual recertification process. The specific timeline for recertification is largely determined by the local public housing authority or the property owner. *See How the HUD Annual Recertification Process Works*, LegalClarity Team (Jan. 26, 2026), https://legalclarity.org/how-the-hud-annual-recertification-process-works/ [https://perma.cc/3LEL-SUEJ].

distress. (*Id.* at ¶ 30.) Plaintiff brings this action under 42 U.S.C. § 1983 against Defendant IHA and Defendant Nickell in her individual and official capacities, asserting claims for violation of due process (Count 1); First Amendment retaliation (Count 2);[4] violation of 42 U.S.C. § 1437f and HUD regulations (Count 3); and municipal liability under *Monell* (Count 4). Defendants move to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 9, 17.)

## Legal Standard

Under the Federal Rules of Civil Procedure, a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The well-pleaded allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party. *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (8th Cir. 2008).

A "*pro se* complaint must be liberally construed, and *pro se* litigants are held to a lesser pleading standard than other parties." *Topichan v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (internal citations and quotation marks omitted). Even so, pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *see Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).

## Discussion

Plaintiff asserts four claims under 42 U.S.C. § 1983 arising from her alleged termination from the HCV Program administered by IHA in August 2024. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived her of a right secured by the Constitution or federal law. *See* 42 U.S.C. § 1983. Thus, every § 1983 claim

---

[4] While Plaintiff's narrative portion of the Amended Complaint characterizes Count 2 only as "Retaliation Under 42 U.S.C. § 1983," (Doc. 4 at 14), the form complaint preceding the narrative portion of the Amended Complaint lists Count 2 as "42 USC 1983 First Amendment Retaliation," (*id.* at 3). Thus, the Court construes the claim as arising under the First Amendment.

"has two key elements: (1) the violation of a right secured by the Constitution and laws of the United States (2) by a person acting under color of state law." *Yassin v. Weyker*, 39 F.4th 1086, 1089 (8th Cir. 2022) (internal quotation marks omitted).

Section 1983 authorizes redress for violations of constitutional rights and statutory rights. It "is not itself a source of substantive rights, but a method for vindicating [federal] rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *See Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Instead of arising from § 1983 itself, constitutionally protected property interests "[s]tem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

## I. Official Capacity Claims Against Defendant Nickell

At the outset, the Court notes that Plaintiff asserts claims against Defendant Nickell in both her official and individual capacities. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "An official-capacity-suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see Downs v. Bush*, No. 24-1456, 2025 WL 2058352, at *1 (8th Cir. July 23, 2025) ("We agree with the district court that the official capacity claim against Sheriff Bush is duplicative of the claim against Ray County."); *id.* ("A suit against a public employee in his or her official capacity is merely a suit against the public employer." (quoting *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999))). Plaintiff asserts Counts 1-3 against both Defendant IHA and Defendant Nickell. Thus, Plaintiff's claims against Defendant Nickell in her official capacity in Counts 1-3 are duplicative of the claims asserted against Defendant IHA and are **DISMISSED**.

## II. Section 1983 – Procedural Due Process (Count 1)

In Count 1 of the Amended Complaint, Plaintiff asserts a claim against IHA and Nickell for violation of her procedural due process rights pursuant to § 1983. Plaintiff contends that she possessed a continuing, constitutionally protected property interest in rental assistance benefits she received as a participant in the Housing Choice Voucher program, and that Defendants deprived her of that interest without due process of law. (Doc. 4 at ¶ 32.) Specifically, Plaintiff alleges that Defendants terminated her housing assistance without providing adequate notice or an opportunity

4

for an informal hearing as required by HUD regulations and the Due Process Clause of the Fourteenth Amendment. (Doc. 4 at ¶¶ 33-34.) IHA argues that Plaintiff fails to state a plausible claim for *Monell* liability; Nickell argues that she is entitled to qualified immunity and that Count 1 fails to state a procedural due process claim.

### A.    Defendant IHA

Defendant IHA argues that Count 1 should be dismissed because Plaintiff has not alleged that the purported due process violations arise from an official policy, custom, or practice of IHA. "Liability under § 1983 for a governmental entity must be based upon an official custom, policy, or practice of the city that causes the constitutional deprivation . . . ." *Palmore v. City of Pacific*, 851 F. Supp. 2d 1162, 1174 (E.D. Mo. 2010) (citing *Monell*, 436 U.S. at 690-94). Respondeat superior is not a basis for rendering municipalities liable under § 1983 for constitutional torts of employees. *Monell*, 436 U.S. at 690. Only when execution of a government policy inflicted the injury can a governmental entity be responsible under 42 U.S.C. § 1983. *Id.*

Plaintiff's allegations in the Amended Complaint pertaining to Count 1 do not mention any policy, custom, or practice of IHA. At most, it appears that Plaintiff alleges that Defendant IHA failed to follow the regulations concerning informal hearings prior to termination. However, Plaintiff does not allege that refusal to grant informal hearings prior to termination is a formal policy, or the sort of custom or practice that is so widespread as to establish *Monell* liability. Plaintiff only alleges that IHA failed to follow the requirements for an informal hearing in her own case. *See Poemoceah v. Morton County*, 117 F.4th 1049, 1057 (8th Cir. 2024) (finding failure to allege facts establishing a pattern of conduct where plaintiff only pleaded facts about his own experience).

In Plaintiff's suggestions in opposition to the motion to dismiss, she attempts to identify a policy or custom for the first time as follows:

- **Written Policy:** The Admin Plan[5] demonstrates a written policy on discretionary terminations and optional verification forms.

- **Custom/Practice:** Elevation of optional forms into mandatory termination demonstrates a policy or custom that affected Plaintiff's rights, satisfying Monell pleading requirements.

---

[5] Referring to IHA's Administrative Plan.

(Doc. 12 at 5.) As best as the Court can discern, Plaintiff is attempting to allege that the termination of her rental assistance voucher was *contrary to* the written IHA Administrative Plan. Plaintiff has not alleged that the Administrative Plan itself is somehow unconstitutional. Thus, the written Administrative Plan is not a "policy" for purposes of establishing *Monell* liability as to her § 1983 claim in this lawsuit. As to her allegation that there is a custom or practice of elevating optional forms into grounds for mandatory termination, her claim again fails because she has not alleged any widespread pattern of conduct to establish such an unofficial custom or practice. The only allegations before the Court pertain to Plaintiff's own termination of assistance. *See Poemoceah*, 117 F.4th at 1057.

Accordingly, Count 1 is **DISMISSED** as to Defendant IHA because Plaintiff has not pleaded sufficient facts to state a plausible claim for relief under *Monell*.

### B.      Defendant Nickell

Defendants also argue that Count 1, as brought against Defendant Nickell in her individual capacity, is barred by qualified immunity and because it fails to state a procedural due process claim. Government officials are shielded from civil liability unless their conduct violates a clearly established statutory or constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009).

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV § 1. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Defendant Nickell argues that Plaintiff does not plead a plausible protected property interest in this

6

case because Plaintiff's housing voucher expired and she has no "legitimate claim of entitlement to the extension of her voucher term."[6]

As the Supreme Court has explained, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1974). The Eighth Circuit has likewise noted that a protected property interest requires more than an abstract need or desire and must arise from state law or other independent sources that create substantive entitlements. *Craft v. Wipf*, 836 F.2d 412, 416 (8th Cir. 1987) (citing *Roth*, 408 U.S. at 577).

The Supreme Court has confirmed that individuals receiving federal welfare assistance have statutorily created property interests in the *continued* receipt of those benefits. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970) and *Mathews v. Eldridge*, 424 U.S. 319 (1976)). Thus, when an individual is already participating in a government benefits program and is receiving benefits, those benefits create a protected property interest that generally cannot be terminated without due process. *See Goldberg*, 397 U.S. at 267-68. Courts within the Eighth Circuit, among other circuits, have applied this principle to issued public housing and Section 8 benefits. *See Moore v. Merritt*, No. 4:21-cv-352-DPM, 2021 U.S. Dist. LEXIS 134288, at *2 (E.D. Ark. July 19, 2021) ("The principle animating *Goldberg v. Kelly*

---

[6] As one district court has explained of this aspect of the HCV Program:

> Income eligible families (or individuals) seeking to participate in the [housing choice voucher] program file an application, and those who are determined to be preliminarily eligible are placed on a waiting list. When funding becomes available, the [local administrator] . . . may issue a voucher to a family after eligibility has been determined and they have been briefed on program rights and obligations. Once issued a voucher, a family may begin searching for a unit. A voucher is not a lease; rather, it is a commitment from the [local administrator] that it will pay the landlord of a suitable housing unit a housing subsidy on behalf of the participating family. The family is responsible for paying the difference between the rent charged and the amount subsidized by the program. A voucher has an expiration date, which may be extended to give a family additional time to locate housing.

*Augusta v. Cmty. Dev. Corp. of Long Island, Inc.*, No. 07-CV-0361 (JG)(ARL), 2008 WL 5378386, at *2 (E.D.N.Y. Dec. 23, 2008) (footnotes omitted). "[M]erely holding a voucher does not make a family a 'participant' in the program," but rather, "[a] family is admitted to the program as a 'participant' based on the effective date of the first Housing Assistance Payment contract executed by the [public housing authority] for a family (first day of initial lease term) in a tenant-based program." *Id.* at *2 n.3 (internal quotation marks omitted; quotation cleaned up).

establishes that the Due Process Clause protects Moore's and Carson's property interest in their issued Section 8 vouchers."); *Awnuh v. Pub. Hous. Agency of the City of St. Paul*, No. 19-cv-2765 (ECT/TNL), 2020 WL 7047789, at *6 (D. Minn. Dec. 1, 2020); *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1156 (D. Minn. 2011) (holding that a *reduction* in issued Section 8 benefits "likely amounts to a deprivation of a property interest"); *see also Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 187 (6th Cir. 1984) (holding that "due process requires a hearing prior to termination or denial of recertification" for current participants in the Section 8 voucher program).

However, it is also well established that there is no protected property interest in an individual's initial application for receipt of benefits, including housing vouchers. *See Hill v. Grp. Three Hous. Dev. Corp.*, 799 F.2d 385, 393 (8th Cir. 1986) (holding Section 8 applicants do not acquire property interest in receipt of benefits merely upon proof they satisfy eligibility requirements). And by the same logic, there is similarly no protected property interest in the discretionary extension of a housing voucher term. *See Ely v. Mobile Hous. Bd.*, 605 F. App'x 846, 850 (11th Cir. 2015) (holding that "a recipient's property interest in a housing voucher lapses when that voucher expires"); *Burgess v. Alameda Hous. Auth.*, 98 F. App'x 603, 605 (9th Cir. 2004) (affirming dismissal of due process claim for lack of property interest in housing voucher extension); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (recognizing that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion"); *Augusta v. Cmty. Dev. Corp. of Long Island*, No. 07-CV-0361 (JG)(ARL), 2008 WL 5378386, at *6 (E.D.N.Y. Dec. 23, 2008) (finding that due process does not require a hearing when a participant is terminated from the Second 8 program as a result of the voucher's expiration rather than "due to any determination or decision to terminate on the part of [public housing administrator]").

In the Amended Complaint, Plaintiff alleges that she was terminated from the Section 8 program after she refused to complete the entire packet provided for annual recertification. Plaintiff alleges that after she refused to sign a particular form, she was notified that she "had been removed from the [housing choice voucher] program." The Court acknowledges that Plaintiff's pro se Amended Complaint also suggests that she had a voucher for which she had requested two 30-day extensions under IHA's Administrative Plan and that at some point during the relevant time frame for this litigation she "had no stable residence." Nevertheless, Plaintiff alleges that the

voucher was not "expired" when she was terminated from the program for not completing the full annual recertification packet (because of the two "mandatory" extension requests under IHA's Administrative Plan).

Liberally construing Plaintiff's pro se Amended Complaint as the Court must do, the Court finds that Plaintiff has stated a plausible procedural due process claim and Nickell is not entitled to qualified immunity at this immediate juncture. Plaintiff plausibly alleges that she was denied a hearing that was required by due process before she was terminated as a participant from the HCV Program for failing to complete the full annual recertification packet, as separate from the expiration of any voucher she had been issued. In other words, liberally construing the pro se complaint, Plaintiff alleges more than that her housing voucher merely expired, as Defendant Nickell contends.[7] At issue was her recertification to be eligible to continue to receive benefits from the program as a program participant. As set out above, it is clearly established that a pre-termination hearing is required before a participant is terminated from the housing choice voucher program. *See Younger v. Wright*, No. 13-cv-289 (AWT), 2014 WL 909664, at *5 (D. Conn. Mar. 7, 2014) ("Due process requires that prior to termination of the plaintiff's property interest in her Section 8 Housing Choice Voucher, she receives: (1) timely and adequate notice, including the reasons for the proposed termination, (2) an opportunity to be heard at a pre-termination hearing, including the right to present evidence and confront and cross-examine witnesses, (3) a right to be represented by counsel at the hearing, (4) a written decision, including the reasons for the determination and the evidence on which the decision maker relied, and (5) an impartial decision maker." (citing *Goldberg*, 397 U.S. at 254)).[8]

Accordingly, Defendant Nickell's motion to dismiss Count 1 on qualified immunity grounds is **DENIED**.

### III. First Amendment Retaliation under Section 1983 (Count 2)

---

[7] Plaintiff's pro se Amended Complaint is somewhat unclear or incomplete in some respects, particularly as to providing a full and complete picture of all of the surrounding circumstances. Although the Court finds that the Amended Complaint is sufficient to withstand a motion to dismiss, Defendant Nickell's argument may be revisited (and would be better taken, if supported by evidence) at a later stage of this case when the Court is not bound by the pleadings.

[8] Indeed, federal regulations require a hearing before a participant is terminated from the housing choice voucher program "because of the family's action or failure to act," 24 C.F.R. § 982.555(a)(iv), which includes the failure to "sign and submit consent forms for obtaining information" as consistent with other federal regulations, 24 C.F.R. § 982.552(b)(2).

Plaintiff next alleges that Defendants engaged in First Amendment retaliation in violation of § 1983. (Doc. 4 at ¶¶ 42-43; Doc. 12 at 5.) To establish a claim for retaliation under the First Amendment, Plaintiff must show that "(1) [s]he engaged in a protected activity, (2) the government took adverse action . . . that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (quoting *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)).

Plaintiff characterizes her refusal to sign the IHA ROI Form as a "protected activity." (Doc. 4 at ¶ 39.) Plaintiff further alleges that Defendants then terminated her as a participant of the HCV Program because of her refusal to sign the IHA ROI Form. Defendants argue that the refusal to sign the IHA ROI Form is not protected activity and thus fails to state a First Amendment retaliation claim. Alternatively, Defendants again argue that Plaintiff failed to allege a policy, custom, or practice as to Defendant IHA and that Defendant Nickell is entitled to qualified immunity because Plaintiff has not shown that the right alleged (here, a First Amendment right to refuse to sign the IHA ROI Form) was clearly established.

As with Count 1 above, Plaintiff has again failed to sufficiently plead an official policy or unofficial custom or practice which would establish *Monell* liability against Defendant IHA. The allegations in the Amended Complaint are conclusory. Plaintiff's attempts to supplement her allegations in the suggestions in opposition also fall short for the reasons previously explained. Thus, Count 2 is dismissed as asserted against Defendant IHA.

Moreover, the Court finds that Defendant Nickell is entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim. The parties disagree as to whether refusing to sign the IHA ROI Form is "protected activity" or speech for purposes of a First Amendment retaliation claim. Defendants note, and the Court agrees after independent research, that it does not appear that any court has addressed whether refusal to sign a form required for participation in a federal benefits program is protected speech. Plaintiff's claim here is reminiscent of claims brought pursuant to the compelled speech doctrine, which "is concerned about 'the government putting particular messages in the mouths of private speakers.'" *Henderson v. Springfield R-12 Sch. Dist.*, 163 F.4th 478, 494 (8th Cir. 2025). "To state a claim for compelled speech, a plaintiff is required to establish three elements: (1) speech; (2) to which she objects; that is (3) compelled by some governmental action." *Id.* Here, Plaintiff has ostensibly pleaded the foregoing elements by

10

alleging that Defendant IHA requires benefits recipients to fill out the IHA ROI Form, and terminated her benefits and participation in the program when she refused.

However, the Court need not conclude whether Plaintiff's allegations regarding being required to fill out the IHA ROI Form "demonstrate the deprivation of a constitutional or statutory right," because the Court concludes that such right was not "clearly established at the time of the deprivation." *Howard*, 570 F.3d at 988; *Pearson*, 555 U.S. at 236 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). The Court has not found any caselaw suggesting that the refusal to sign a form required by a public housing agency for the continued receipt of public housing benefits constitutes protected speech. Because this right was not clearly established, Defendant Nickell is entitled to qualified immunity as to Plaintiff's First Amendment retaliation claim.

Accordingly, Count 2 of the Amended Complaint is dismissed.

## IV. Violation of Section 1437f & HUD Regulations under Section 1983 (Count 3)

In Count 3 of her Amended Complaint, Plaintiff alleges IHA violated 42 U.S.C. § 1437f and various unspecified HUD regulations. Section 1983 is not itself a source of substantive rights. *See Baker*, 443 U.S. at 144 n.3. Instead, § 1983 provides a way to vindicate federal rights conferred by some other statutory or constitutional authority. However, it is well established that the statutory provisions of Section 8 of the United States Housing Act do not create a private right of action. The Eighth Circuit has explained that "Congress did not intend to create enforceable rights for individual applicants nor to allow private enforcement of the Section 8 program." *Hill*, 799 F.2d at 394-95 (quoting *Phelps v. Hous. Auth.*, 742 F.2d 816, 821 (4th Cir. 1984)). As a result, "[p]laintiffs have no implied private right of action under Section 8." *Id.* Instead of private individuals, HUD enforces any Section 8 program violations. While Plaintiff attempts to rely on 42 U.S.C. § 1983 to allege a private right of action for violation of § 1437f and HUD regulations, § 1983 does not automatically provide a vehicle to enforce federal statutes. The Supreme Court has made clear that "[f]ederal statutes do not confer 'rights' enforceable under § 1983 'as a matter of course.'" *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 365 (2025).

Instead, to establish a private cause of action, a plaintiff must show that Congress "speaks with a clear voice, and manifests an unambiguous intent to confer individual rights'" as to that

statute. *Medina*, 606 U.S. at 374 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002)). Section 1437f does not contain such rights-creating language. Rather, the statute establishes a federal funding program administered by HUD and implemented by local housing authorities. Because the statute was enacted pursuant to Congress's Spending Clause authority, it generally operates as a set of conditions attached to federal funds rather than as a source of individually enforceable rights. *See Gonzaga*, 536 U.S. at 280. Courts have therefore declined to infer privately enforceable rights arising from Section 8 or its implementing regulations. *See Hill*, 799 F.2d at 394. Because 42 U.S.C. § 1437f does not create a privately enforceable right, Plaintiff's allegations that IHA and Nickell violated § 1437f do not state a cognizable claim under § 1983.

Plaintiff's reliance on HUD regulations does not alter this conclusion. First, Plaintiff does not refer to any particular regulations or specify what rights such regulations may confer. Moreover, regulations cannot create a private right of action where the underlying statute does not clearly confer one. *See Freeman v. Fahley*, 374 F.3d 663, 665 n.2 (8th Cir. 2004) ("[R]egulations 'may not create a right that Congress has not.' . . . 'Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.'" (quoting *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001))). Because § 1437f lacks the clear rights-creating language required for enforcement under § 1983, Plaintiff cannot rely on its implementing regulations to create an enforceable private right.

Accordingly, Count 3 is dismissed for failure to state a claim.[9]

## V.  *Monell* Liability (Count 4)

In Count 4, Plaintiff asserts a claim against Defendant IHA for *Monell* liability under § 1983, alleging that Defendant "maintained policies, customs, or practices that caused the constitutional violations Plaintiff suffered." (Doc. 4 at ¶ 49.) "A municipality may be held liable for the unconstitutional acts of its employees only when (1) a municipal policy or custom exists, and (2) that policy or custom was the 'moving force' behind the constitutional violation(s)." *Lollie v. Johnson*, No. 14-cv-4784 (SRN/HB), 2015 WL 3407931, at *4 (D. Minn. May 27, 2015) (citing *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).

---

[9] Plaintiff appears to concede that Count 3 does not state a claim for the reasons the Court identified herein. (*See* Doc. 12 at 5 ("Plaintiff does not rely on 1437f as a standalone cause of action.").)

As discussed above, Plaintiff has not plausibly alleged any specific policy, custom, or practice sufficient to establish *Monell* liability. Plaintiff pleads in conclusory fashion that "IHA maintained policies, customs, or practices" causing harm. (Doc. 4 at ¶ 49.) Such bare assertions are insufficient to state a *Monell* claim under § 1983. *See Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013).[10] Nor has Plaintiff alleged any pattern of conduct reflecting a widespread custom or practice as to any constitutional violation; her own experience alone is insufficient to plead a *Monell* claim. *Poemoceah*, 117 F.4th at 1057.

Therefore, Count 4 is dismissed for failure to state a claim.

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that Defendants' motion to dismiss, (Docs. 9, 17), is **GRANTED in part** and **DENIED in part**. Specifically, the motion to dismiss is granted as to: Count 1 and Count 4 (as asserting a *Monell* claim under 42 U.S.C. § 1983 against Independence Housing Authority), Count 2 (asserting a § 1983 First Amendment retaliation claim), and Count 3 (asserting a § 1983 claim for violation of 42 U.S.C. § 1437f and HUD regulations). At this juncture, the Court declines to dismiss on qualified immunity grounds Count 1 asserting a § 1983 due process claim against Defendant Nickell.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: May 26, 2026

---

[10] In *Ulrich*, the Eighth Circuit affirmed dismissal of a *Monell* claim where the plaintiff alleged no facts demonstrating the existence of a policy or custom causing the alleged constitutional deprivation. The court explained that merely labeling supervision and training practices as "inadequate," without factual support beyond the plaintiff's own incident, is insufficient to state a *Monell* claim. 715 F.3d at 1061. Plaintiff's allegations here suffer from the same defect, as the Amended Complaint identifies no specific policy and she alleges no facts demonstrating a persistent and widespread custom.

13